I'm going to take up our final case, Mr. Goldstein, whenever you're ready. Thank you, Your Honor. May it please the Court? My name is Tommy Goldstein. I represent McKellan in this case. What I would like to do, Your Honor, in order to focus your attention on the material issues in this case is I'd like to work backwards. And what I'd like to do is shine a very small, bright light on this case and then widen the aperture and work backwards. The place to work backwards is the newest events that have occurred in this case, which are the post-judgment conduct of the City of Columbia. The post-judgment conduct involves the series of tickets, these criminal prosecutions that are now pending, that I ask permission to bring before the Court and to ask you to consider as part of the case in the totality. Now, I know it's a breach of good... These items are not in the record now. Sir. Are these items in the record now? No. There's the court deferred argument on my application to argue outside the record to today's hearing. So you haven't decided that you're going to let them in or not, but you've given me permission by order to bring it to your attention and argue that they should be included. All right. So you're going to tell us now what this is? Yes. This goes straight to the lower court's finding, which is a non-appealed finding in this case, which is the district court's finding on prior restraint. The district court held, and I'm quoting from the order. This is Joint Appendix, page 4053. This is the lower court's order. Finally, the ordinance says provide for prompt judicial review by providing that the applicant appeals to a hearing officer and the hearing officer denies a license. The applicant may appeal the decision to a court of competent decision. Of course, that's what I'm doing here today. We're here on an appeal. And the hearing officer's decision does not become effective until the 30th day after it's rendered. Furthermore, the ordinance is provided. What difference does all this make to the amendment? It says that they only deny a business license for noncompliance with locational requirements of the zoning law. But this has always been a locational case. Well, now we're widening the aperture. I've skipped my first and second point to my third, but I'm happy to go to there. This ordinance is unlike any ordinance that has ever been before this circuit. Now, this ordinance has been evaluated by the Seventh Circuit, and we'll talk about that in a minute if I have time to get to it. This ordinance that is before this court is a new territory now. This is an off-the-shelf prepackaged ordinance that's for sale to any municipality. And I have to tip my hat to Mr. Bergtholdt. He's done a wonderful job creating this product and going around the country and selling it. What difference does that make here? Here's the difference, because this ordinance expands out. It pushes the envelope. We're so far away from Renton and Alameda now. We have gone into uncharted territory. This ordinance that's before this court is a total ban on any adult message at any location. And I'll be glad to walk you through it. I mean, that's not what the purpose of the ordinance is stated to be. It says it's neither the intent nor effect of this article to restrict or deny access by adults to sexually oriented materials. It's focused on its own terms upon the secondary effects of these establishments. That's what it says, but that's not how it's applied. It's applied differently. It's applied to effect a total ban. No, it's not. I mean, the district court has made some findings here, which it seems to me would warrant respect, which is if it was a total ban, why would there have been 45 alternative sites? There aren't 45 alternative sites. That's a highly disputed question of fact that was resolved entirely against the appellate and in favor of the city. The judge substituted his – he weighed the credibility and believability of the witnesses, and he found that the city's witness was more believable than the appellate's witness. You can't do that at the summary judgment standard. We put up cogent and convincing evidence on each – and by the way, the sites always change. It started out as 42, and then it morphed to 46. But either way, looking at it, this changes something. He found it was indisputed that some of the sites that you were seeking to disqualify as alternate sites, the reason you cited for saying that they were unsuitable was flatly incorrect. You said that the alternative sites didn't possess street frontage, but many of the sites did possess street frontage. The district court said the only site that you really addressed yourself to was a utilities site, which left a large number of sites unaddressed. The point is you're coming to us, and you're saying that this is a total ban. Correct. But the ordinance by its stated terms says no. That's not what this ordinance is at all. And then the district court has also found that there are a large number of alternate sites for you to locate, and that would seem to belie the notion that this is some kind of total ban. So let's get down to it, because what you're claiming for yourself, essentially you want to stay where you've always been, and what you're claiming for yourself is not a right to locate in the city. You certainly have a right to locate somewhere in the city, but like any business, you can't locate exactly where you please. I mean, that's the thing. There's no business of any sort. This isn't directed at the nature of your business. There's no business of any sort that gets to locate exactly where they want to. That's exactly correct, but our evidence shows that there are no available sites. That's our evidence. Now, whether you choose to believe it or not is a different thing. Your evidence has to be of constitutional significance, not just that it's a difficult site or it's not available for lease now or not available for sale, and I thought the district court went through fairly extensively why the objections you raised were not objections of constitutional significance. That is correct, but the only way he could do that was by not believing the evidence put forth by the appellant. But let's suspend that for a moment and let's turn the summary judgments on its head. Let's look at it in the light most favorable to the city. Let's suppose I'm completely wrong and there are 46 sites available. That is 0.016% of the total available land in the city of Columbia. That is a unconstitutional burden on the right of a – it houses all the state government offices. It's the capital of South Carolina. A lot of the city is taken up with state property. The University of South Carolina is there. How about Fort Jackson? Fort Jackson is bigger than the city of Columbia in terms of acreage. Isn't Fort Jackson – isn't part of Fort Jackson in Columbia? No, sir. You know, I haven't examined the city lines, but I don't think Fort Jackson is within the corporate limits. I can tell you that the – and I can point to the record on appeal. What I'm saying is there are large residential neighborhoods. There's the fort. There's the state government located there. There's the University of South Carolina. All those sprawl. So just not a whole lot of land. And you – I mean, the figure you cited to us doesn't seem to me to take into account the reality of what's going on within that or many other cities. But the other question I have for you, and it seems to me analytically difficult here for you to meet, is this supposed to be a First Amendment case? All right. Put aside the question of whether what these euphemistically call personal devices, where I don't know what kind of expressive value that they necessarily have or the oils or whatever is in the inventory, query whether this is expressive. But both Alameda and Renton make a very important doctrinal point, which is that an ordinance aimed at secondary effects – and this one appears, as far as I can tell, to be aimed at secondary effects – that that is not content-based, that that is content-neutral. And both of those Supreme Court cases say if you're concerned about secondary effects, that's not content discrimination, as the First Amendment has historically defined it. Now, you've tried to say, well, this isn't aimed at secondary effects or there are no secondary effects. And then you put on an expert, Mr. McLaughlin,  because he wasn't able to cast serious doubts upon the secondary effects. So you've tried to impeach the fact that this ordinance was aimed at secondary effects by putting Mr. McLaughlin on, but Mr. McLaughlin has not been qualified as an expert in this area for the very reason that he's been unable to undermine the fact that these sorts of establishments, while they have an unquestioned right to locate somewhere, do have secondary effects, and you just can't put them next to a church or a school or in a residential area where they're going to produce genuine problems. Mr. McLaughlin has been qualified by 15 or 20 courts as an expert. I saw an awful lot of courts that had not qualified. Well, I can point to the Joint Record on Appeal. His resume is attached and it has a list of all the cases that have appointed him as an expert. But once again, we're going to the weight to be given to his testimony and not to whether it's true or not. Now, this ordinance is content-based. I understand what the ordinance says. You know, ordinances can say anything. It doesn't mean that it's true. The city council people, in the minutes, on the record, before city council, give away the game. They make statements. One council member said, The tragedy in my heart is we can't zone them out of the city. Another one said, What does that show? I know the statements you mean, but I don't understand how any of them shows that what these council members were concerned about was the message rather than the secondary effects. Even if you're concerned about secondary effects, you might say, I wish we could just get rid of them altogether. They have such bad secondary effects. I don't understand why those statements show a concern as to message versus a concern as to secondary effects. I agree they show a very deep concern about this store, but not the reason for the concern. Let's face it. It's an unpopular message. Why do we just have to face that? Where in the record does someone say, My concern comes from the message and not from the secondary effects? Well, you have to look at the order. Here's the answer to the question, and the answer is supplied by the district court in Minneapolis in the southern district of Illinois in the Metro Pony case. When the district court judge in the Metro Pony case said, In order to analyze these ordinances, you have to look at the internal myriad of restrictions that are contained in the ordinance that have nothing to do with combating negative secondary effects. I'll give you an example. Segregation of inventory. This is a district court case? Metro Pony, correct. It's cited extensively in my brief. But it's not a court of appeals? No, it's not. But Abilene is certainly, the Seventh Circuit has analyzed the Burke-Thold ordinance very critically, and so has the Ninth Circuit. We're not talking about a segregation of inventory here. As I understand it, the reason you're not, you want to continue where you always did, and it's a locational thing. It's a locational dispute. But what are we supposed to do? Every time a city council or a zoning board denies a business license or a hardship exception to a particular business because it's too near a church or too near a school or it's detracted from pulling down the property values of the surrounding neighborhood, are we supposed to act as a super board of zoning appeals on all of these things? Because that's, you know, that's, I haven't seen anything that makes your case at all differentiated from any other. Oh, well, the answer is we're not near a school and we're not near a residence. They had to continue to amend the ordinance time after time after time to expand the reach until they got to the magic number. But if you look at Alameda, Alameda says in order to— Did you reserve some of this for rebuttal? I did, and I'm way past my time. Well, we've given you lots of time, but you've got some rebuttal time. Right, that's right. And you've reserved quite a bit of it. So we'll look forward to hearing from you at that point. Thank you, Your Honor. Mr. Berto. Good morning, Your Honors. May it please the Court. Scott Berto on behalf of the City of Columbia. We ask that the Court affirm the trial court's thorough summary judgment order that went through each and every issue, each and every site in meticulous detail. On appeal, none of the appellant's arguments even make a dent in the district court's analysis. For example, let's start at the alternative sites issue. There's only one site in the entire appellate brief, the opening brief from the appellant, that even addresses any particular argument or constructs an analysis to attack the district court, and that was about the public utilities that Judge Wilkinson mentioned. In this Court's decision in McCarver v. Lee from 2000, it's clear that passing references to one particular site out of 46 is insufficient to preserve the issue for appellate review. Same with the passing reference to individual regulations. Why is this individual out of compliance? They're in the wrong location. They're in the wrong location. They're in a site that doesn't allow adult businesses. They're too close to residential. It's exactly what Your Honor noted. Too close to a residential area? Yes, and it's unlawful. They were given a period of time to amortize. It was interesting to me. You had a two-year amortization period. That's correct. So you weren't just running them out of town on the midnight train. Well, it was actually more than that, Your Honor, because what happened is they passed the two-year amortization following a Supreme Court of South Carolina case that had approved that, but they also had a provision for extension on hardship. If you approved financial hardship, you could extend that period, and they came in on a hearing, and the hearing officer, an independent hearing officer, found that the owner falsified financial records and denied the hardship extension. So I don't want to belabor long at the podium, Your Honor. I believe that the Court understands the issues. The district court applied the proper test under retinence, progeny, and thoroughly refuted each and every argument. It was a really thorough district court opinion. It was very thorough, Your Honor, and just to the extent that the district could respond to some of the sort of out there arguments from my opposing counsel, the district court didn't believe one expert over another. The district court went through each of McLaughlin's reasons for disqualifying sites and showed how, under governing law, that those were not constitutionally relevant, as Judge Agee noted. Things like economic viability and other things that Renton and this Court's decision in DG Restaurant v. Myrtle Beach say are not part of the constitutional analysis. Let me ask my good colleagues here whether they have some questions for you. Just a couple. One is just a factual question. You're not arguing, right, that there's no First Amendment protection at all here? Didn't the store also have, like, books and magazines and DVDs? It did. But here's sort of the morphing, and he wants to get into these post-judgment facts. There's no justification for this entry into post-judgment conduct. Basically, to answer your question, it's a little bit circuitous, and I want to get to the point. But they obtained a license in 2012 and operated. They obtained a license in 2013 and operated without obstruction from the city. December 31, 2013, was the end of their amortization period. They filed a lawsuit 10 days before that. And basically, by tying it up in the district court, they've been operating ever since. After they... Answer the judge's question. Now, Your Honor, at some point they had adult video magazines, which would be constitutionally protected. But since January of 2016, when the district court denied their post-judgment motions, they've only been cited for operating a sexual device shop, which is not constitutionally protected. At the time of this litigation, this was constitutionally protected material? Yeah, there were some DVDs. But when the city has gone in this year, there's not enough of a threshold that would cause it to be an adult bookstore. The only definition that's currently in play is the sexual device shop, which that is not protected speech. And it does kind of bear on the argument that there's no lawful message anywhere in the city. That's just totally unsupported. And any store in the city could have up to 35% sexually explicit media items that would be presumptively protected by the First Amendment and not be regulated as an adult store. So the city set its thresholds to accomplish narrow tailing analysis and so forth. So if the court has no further questions... One more question. Sorry, one more question. I just wonder if you can address for me this question about kind of our standard of review, where we tend to give a lot of deference to localities, right? That's what the Supreme Court says. In the city of Los Angeles, they know what's going on in that city. And that's why we give so much deference to these city judgments. And is there any tension between kind of the rationale behind those cases and what we have now, which is this sort of one-size-fits-all national ordinance that's being shopped from city to city? It's not, Your Honor. That's kind of some hyperbole and ad hominem that was in the brief that I just decided not to engage. But this was very clearly tailored to the needs of the city of Columbia. For example, you're not going to see any other ordinance in the country or any other case that has a 900-foot buffer requirement for churches and residential neighborhoods and daycare centers, yet a 1,250-foot requirement for elementary schools. And the reason that the city did that is they couldn't support enough sites at the 1,250-foot buffer if they buffered all sensitive uses that way. And so they tweaked it to make sure that they're giving maximum protection to the elementary schools while at the same time providing a lower amount of protection. And why did they do that? Only because they wanted to ensure that they had enough sites. And although it's not mentioned in my opposing counsel's brief, it's clear under the three cases from this circuit that deal with alternative sites that one business having the ability to choose among 45 or 46, it doesn't matter, sites, is more than sufficient. The Alno Enterprises case out of Baltimore from this court in 2001 said that it was sufficient that three plaintiff adult businesses had to choose from among 11 sites. And then there's the McDougall's East case versus Caroline County, I think, in 2004, where there was 12 sites for one adult business. So there's no constitutional minimum necessary. The Constitution doesn't prescribe that, and that's pretty much circuit case law from around the country. And with that, I would ask... I understand opposing counsel's argument going to the summary judgment standard as it affects the secondary effects analysis. Counsel says that the district court took the decision away from a jury on whether or not their evidence from the expert cast direct doubt on the validity of the city's proffered reasons for secondary effects. So what's your response to his argument? It's very simple. The expert just came in and made an opinion masquerading as facts. It was really a legal conclusion. He said you have to have empirical evidence. He said that reliance on judicial opinions that have found secondary effects is of absolutely no evidentiary value. And that's why, as Judge Wilkinson noted, courts around the country, from the Second Circuit to the Fifth Circuit and the Ninth Circuit, have rejected this expert on that issue. He simply seeks to say that this evidence is not reasonably believed to be relevant, even though it's the exact kinds of evidence that the Supreme Court in Renton and Alameda books has said that legislative bodies can rely on. So that's why there was such an amount of authority in support of the district court's opinion. It's not that this guy came in and said, you don't meet the true standard of any evidence reasonably believed to be relevant. It's that, for example, he said that at page 1236 of the appendix, he attacks a national land use study by saying social science research can never be used when there's empirical data available. But Alameda books explicitly rejects an empirical data requirement, just like this court found in the imaginary images case. What was the baseline then of your response to that point on the inversion of the summary judgment standard that their expert's opinion was invalid as a matter of law and could not cast direct doubt on the city's evidence? That's correct. It's really two parts. Judge Wilkinson talked about qualifications. It wasn't so much. He has been found not to be qualified. He's not a criminologist. He's not a statistician. He has no ability to critique these published secondary effects criminology journal articles. So it could have been a Dalbert type of exclusion, a record-keeping thing that would be subject to an abusive discretion standard review. But this was even more fundamental. This was a guy that's hired by the industry around the country to go in and say, this city and that city and county didn't meet the standard because they did exactly what Renton and Alameda books says that you can do. But that's not enough because they should have done an empirical analysis. They should have used some different standard. And a lot of it that he says is just absolutely unsupported by anything in his credentials or in the materials. For example, one of these land use studies that the city relied on done by a national planning firm that found retail-only secondary effects, he said, well, maybe some of these certified MIA licensed appraisers have no – it's possible that some of the respondents in this survey have no experience with commercial real estate. I mean, just totally unsupported guesswork. And that's why so many courts have rejected his opinions as either not admissible or just not sufficient under the Supreme Court's authority. You've answered questions. Pam, do you have additional questions? We respectfully ask. We have no further questions. Thank you. We ask this court to affirm the thorough judgment below. Mr. Goldstein, you have rebuttal time. Thank you, ma'am. Please support. According to the joint appendix, page 1061 and 1062, 27 courts have qualified Mr. McLaughlin as an expert. His resume appears throughout the record. One place it appears is on page 1060. He has a master's of science degree in urban and regional planning with a major paper in intergovernal relationships and the planning process. That doesn't answer the question, does it, of what kind of cases these all were? He made, unlike the city's expert, he went to every single site in person, made measurements, and gave the exact empirical fact data-based information that the U.S. Supreme Court said the court should give deference to in Alameda. He did exactly what he was supposed to do. And whether or not he is . . . What about the district court? A lot of these sites you complained about because they didn't have street frontage. Well, number one, there are many, many businesses in every city in the country that operate quite successfully, but they don't have street frontage. That's not something you can claim of right, but I thought the district court said that's just flatly inaccurate, that the sites you complain of not having street frontage did, in fact, have street frontage. The only way the district court can state that is to make an error of fact and an error of law. Here's the error of fact. He disbelieves our expert and my client, who also went to each site individually and testified. Secondly, if we go to Renton, and Renton is the starting point. We all agree, Renton is the starting point. In Renton, there were 56 available sites, and the U.S. Supreme Court said they were all on public roads, quote, crisscrossed by highways and expressways. Now, that's Renton. We've come a long way from Renton when we're now arguing about the availability of sites that don't even have a road. That's not what Renton says. When Mr. Berthold says there's no constitutional limitation, there are lots of cases that say anything below 1% is constitutionally infirm. The cases are cited in our brief. Also, if we're wrong, why did the city file its letter notice and amend its ordinance to delete the locational requirement that we had complained about? That was a significant fact. Now, what Mr. Doesn't that amendment, though, favor your client or people similarly situated? It makes the ordinance less assailable on appeal. You are correct. But what's interesting about that is what he told the court does not comport with what they said at the city minutes when they passed the ordinance. That's extremely critical. Again, looking at it in the light most favorable to the city, if I brought the lawsuit and I pointed out a constitutional defect that they corrected, aren't we entitled to a remand? They amended their ordinance because my client is a citizen and stepped forward and held the government accountable. Why are we being punished for that? It didn't moot our case. We're still held to the same. Again, I go back to the Metropony scalpel analysis. There's no way you can look at this ordinance in the totality, the myriad of internal regulations that have nothing to do with combating negative secondary effects that make the establishment of a You're not at issue here. What's at issue here is a locational dispute and whether you have a right to a business license in a residential area. But under this ordinance, my client cannot locate anywhere, any location, even if a location existed under this ordinance. You don't know that. Yes, that's what the district court was talking about in Minneapolis in the southern district of Illinois. That's the scalpel analysis. It says that it's a locational matter. As I understand, if you're within a certain distance from a residential area or not next to a school or church and you're in a light industrial or heavy industrial area or whatever, you can locate. You're exactly right. But this ordinance goes so much farther. This nationwide prepackaged ordinance, every enactment, it pushes the You said it wasn't the amendment in your favor on that. Correct. So I think it confines objections to locational objections. It narrowed them. It narrowed them. It doesn't eliminate them. I don't understand why you're complaining about something that worked to your benefit. OK, well, I'm not doing a good job making myself clear. So let me back up and try again. I'm obviously failing miserably. You can't operate a business under this ordinance if you have one magazine and one device. You're out of compliance. So how are you going to disseminate a Now, meanwhile, What strikes me is you have a little bit of a ripeness problem here because if they were as anxious, as you say, to get rid of you, there was an amortization period here. I think it was extended and they've narrowed the ordinance and they didn't go after you under the ordinance on any of these other grounds that you complained about. So, you know, I just I wonder if you don't have a little bit of a ripeness problem. If you relocate to another location and you set up shop and they come after you because you haven't segregated your inventory, let's say, then you have a challenge. But speculating that they're going to be doing this at some point in the future, if you do what, then they maybe do this. That, you know, that's, it seems to me, off in the future. And it channels everything into facial challenges rather than an as-applied, on an as-applied basis, which seems to me inconsistent with what Alameda County and Renton are after. What happened in Renton and Alameda and even in Independence News and Abilene and all the rest of the cases is not what happened in this case. You know, the December 22, 2011 meeting is in the record. You can look at it. It's 22 minutes long and you can see exactly what the city of Columbia did. You can see it. I mean, you don't have to take my word for it. It's on videotape. And they affected a total suppressed, it's a total suppression of any adult message. Meanwhile, Spencers and CVS and Target, they're all. I know, but this is, this argument has a high degree of speculation to it. Well, no, we're. You're just saying this is going to happen to us and this is going to happen to us. I have no idea whether it's going to happen. Well, we're facing 13 citations right now. Present us with a concrete controversy when the day, if the day, if ever the day comes. Well, I notice the red light is on, but it's still ticking down, so I'm confused about that. We appreciate your, appreciate very much your argument. Thank you, Your Honor. Thank you. We will adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris